UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN DEFENSE OF ANIMALS, et al.,

Plaintiffs,

v.

SANDERSON FARMS, INC.,

Defendant.

Case No. 20-cv-05293-RS

**ORDER GRANTING MOTION TO DISMISS**

# I. INTRODUCTION

This case certainly evokes a sense of déjà vu. Four years ago, Friends of the Earth ("FoE") and the Center for Food Safety sued Sanderson Farms on the claim its advertisements for chicken were misleading.[1] Three years ago, extensive discovery began. Two years ago, the complaint was dismissed because the plaintiffs lacked standing. *Friends of the Earth v. Sanderson Farms, Inc.*, No. 17-CV-03592-RS, 2019 WL 3457787, at *1 (N.D. Cal. July 31, 2019) ("*FoE* I (N.D. Cal.)"). This year, a Ninth Circuit panel unanimously affirmed the dismissal. *Friends of the Earth v. Sanderson Farms, Inc.*, 992 F.3d 939 (9th Cir. 2021) "*FoE* I (9th Cir.)"). The Ninth Circuit agreed the plaintiffs had not diverted resources to combat the challenged conduct, in part because it was proper to credit earlier deposition testimony acknowledging FoE had not diverted resources

---

[1] *Friends of the Earth v. Sanderson Farms, Inc.*, No. 3:17-cv-03592-RS (N.D. Cal. Filed June 22, 2017). The Organic Consumers Association also sued Sanderson before withdrawing from the case.

because of Sanderson, despite later affidavits claiming the opposite. As one part of its illustration of how weak the case for diversion was, the appellate court pointed out the plaintiffs "did not publish action alerts or other advice to their members targeting the advertising; did not address Sanderson's advertising in any campaign, press release, blog post, or other communication; did not petition Sanderson; and did not protest Sanderson's advertising." *Id.* at 943.

One year ago, before the original appeal in that case had even run its course, FoE sued Sanderson again for its misleading advertising in the present action. This order decides that case. Starting with the prior case is important because understanding that Plaintiffs are trying to work around the infirmities revealed there sheds light on what is happening here. This time, FoE joined with a new partner, In Defense of Animals ("IDA"). FoE followed what it understood to be the Ninth Circuit's implicit commands to publish action alerts, address Sanderson's advertising in blog posts, and petition Sanderson. IDA undertook similar actions. Thus, Plaintiffs claim they now have standing. Unfortunately for them, this one sentence was not a standing checklist. Instead, it was merely a threshold problem with their case: they had not even diverted resources.

Additionally, an even deeper problem arises: organizational standing requires an injury to the organization itself, not merely its interests. An organization's entirely voluntary action cannot confer standing, no matter its quality or quantity. The organization must be forced to respond to prevent injury, as the order dismissing the previous case noted. *FoE* I (N.D. Cal.) at *3. Even if the Plaintiffs had transformed themselves entirely into anti-Sanderson advocates, they would not have standing because it would not have been due to any injury by Sanderson. Thus, despite their efforts to manufacture standing, Plaintiffs still do not have a leg to stand on. They have missed the forest for the trees. For the reasons further set out below, the motion to dismiss is granted, with leave to amend as to the claims brought by IDA.

## II. BACKGROUND[2]

Sanderson is a poultry processing company. Sanderson has released marketing materials describing its chicken as "100% natural," with no "hidden ingredients," and similar statements. Plaintiffs IDA and FoE are non-profit organizations which advocate to protect animals and the environment. As part of this work, they push to reduce the use of antibiotics in the food supply. Plaintiffs aver that Sanderson's claims are misleading, pointing in part to testing performed by the U.S. Department of Agriculture, which found many instances in which Sanderson's products tested positive for antibiotics and other unnatural substances. Indeed, Plaintiffs aver Sanderson routinely feeds antibiotics to its chickens, in part because it keeps them in crowded and dirty sheds. Plaintiffs also claim Sanderson's marketing is misleading because it leads consumers to believe its chickens are raised in a natural environment, and that there is no evidence pharmaceuticals in poultry contribute to antibiotic-resistant bacteria. Plaintiffs specifically bring claims for violations of California's Unfair Competition and False Advertising laws. Cal. Bus. & Prof. Code § 17200, *et seq.* and § 17500 *et seq.*

Plaintiffs assert they are injured because Sanderson's fraudulent advertising caused them to expend resources which they could have used on other aspects of their missions. IDA says it started a new campaign to counteract the effects of Sanderson's conduct. This comprised at least 12 actions, including writing letters to Sanderson and the FTC, filing a complaint with the Better Business Bureau, and publishing action alerts, a blog post, a media release, and several tweets and Facebook posts. In total, IDA says it diverted at least 200 hours of staff time and related financial resources for this campaign.

FoE says it was forced to divert 40 hours from its other campaigns, such as one for oceans. FoE's efforts included sending action alerts and letters, surveying members, and strategizing. FoE also points to an injury suffered by one of its members, Richard Fogel. Fogel says he purchased

---

[2] The facts in this section are taken from the complaint, which must be accepted as true for the purposes of this motion. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). The facial attack on jurisdiction does not change this, as explained in the next section.

Sanderson chicken because it was advertised as natural and he believed it to be free of antibiotics. If he had known these claims were false, he would not have bought Sanderson chicken.

Plaintiffs have amended their complaint once in response to a previous motion to dismiss. Sanderson now brings a motion to dismiss the First Amended Complaint ("FAC") based on Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 9(b).

### III. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations are not required," a complaint must have sufficient factual allegations to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard asks for "more than a sheer possibility that a defendant acted unlawfully." *Id.* The determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id.* at 679.

Article III of the U.S. Constitution authorizes the judiciary to adjudicate only "cases" and "controversies." The doctrine of standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo Inc. v. Robins*, 136 S. Ct. 1540, 1543 (2016). The three well-known "irreducible constitutional minim[a] of standing" are injury-in-fact, causation, and redressability. *Lujan*, 504 U.S. at 560–61. A plaintiff bears the burden of demonstrating that her injury-in-fact is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010). Organizations establish injury-in-fact if they can demonstrate *both* (1) frustration of its organizational mission and (2) diversion of its resources to combat the particular conduct in question. *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004). An organization cannot "manufacture" an injury

by sustaining litigation costs or by choosing to use resources to fix problems that otherwise would not have affected it. *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010).

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). A motion to dismiss a complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the court's subject matter jurisdiction over the asserted claims. It is the plaintiff's burden to prove jurisdiction at the time the action is commenced. *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction." *Id.* Accordingly, when considering this type of challenge, the court is required to "accept as true the allegations of the complaint." *U.S. ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1189 (9th Cir. 2001).

Issue preclusion bars relitigating the same issue that was "actually litigated" by the party against whom preclusion is asserted, and the prior determination of the issue was a critical part of the judgment. *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1096 (9th Cir. 2004) (citation omitted). Only facts arising after the complaint was dismissed can defeat a claim of issue preclusion. *Paulo v. Holder*, 669 F.3d 911, 918 (9th Cir. 2011)

### IV. DISCUSSION

At the outset, Sanderson argues that FoE's claims are barred by issue preclusion in two ways. First, it argues FoE dropped a claim of representative standing in the previous case, so it cannot bring such a claim based on injuries to its member Richard Fogel.[3] Sanderson also argues FoE's other claims are duplicative of its previous ones. FoE responds that it bases its Complaint

---

[3] For evidence of FoE dropping this theory, Sanderson cites Pls.' Opp'n to Def.'s Mot. to Dismiss First Am. Compl. at 7 n.1, *FoE I* (N.D. Cal.), ECF No. 36 (Oct. 4, 2017).

only on conduct arising after its previous case was dismissed.

Sanderson is correct: FoE's claims are precluded. First, raising and dropping the claim of representative standing may not be "fully litigating" the claim, but regardless, claim preclusion prevents litigation of issues that could have been litigated in an earlier action. *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 474 (1998). It matters not if Fogel only realized Sanderson had deceived him in 2020. FoE dropped the same theory in the previous case. FoE cannot resurrect representative standing. Issue preclusion also bars FoE's other claims. Although FoE undertook new conduct after the previous suit was dismissed, the same issue disposed of the last case just as it disposes of this one: FoE's activities were business as usual. This was actually litigated and essential to the judgment. *McQuillion*, 369 F.3d at 1096.

In any case, standing must be analyzed because issue preclusion cannot prevent the new Plaintiff, IDA, from bringing suit. Sanderson brings a facial attack on IDA's standing. For IDA to have standing, it must show the challenged conduct frustrated its mission and it diverted resources to alleviate its harms. *Am. Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d 1147, 1154 (9th Cir. 2019). Frustration of mission cannot be just a setback to an organization's values or interests, it must result in "an actual impediment to the organization's real world efforts on behalf of such principles." *Jimenez v. Tsai*, 2017 WL 2423186, at *11 (N.D. Cal. June 5, 2017); *see also Havens*, 455 U.S. 363, 379 (1982) (discussing "injury to the organization's activities"); *Pierce v. Ducey*, 965 F.3d 1085, 1089 (9th Cir. 2020) (per curiam) ("To be 'concrete,' the injury 'must actually exist'—an abstract, theoretical concern will not do." (citation omitted)).

The other element, diversion of resources, entails changing resource allocation, not merely going about "business as usual." *Am. Diabetes Ass'n*, 938 F.3d at 1154. Crucially, plaintiffs must show they would have suffered some other injury if they had not diverted resources to fix the problem. *La Asociacion de Trabajadores de Lake Forest*, 624 F.3d at 1088 n.4. The organization must be "forced" into acting because the defendant affected its operations. *Id.* An organization cannot manufacture standing by choosing to fix problems if they otherwise would not have affected it. *Id*. Resources must be spent differently than they would have been otherwise. *Nat'l*

*Council of La Raza v. Cegavske*, 800 F.3d 1032, 1040 (9th Cir. 2015). Standing has been found in some cases where it was not clear the organization was forced into acting, and this part of the standard is not always mentioned. *See generally* Rights Of Others—Organization Standing, 13A Wright and Miller, *Federal Practice and Procedure* § 3531.9.5 (3d ed.). However, there are numerous cases making clear the organization must be forced into acting. *See, e.g.*, *Rodriguez v. City of San Jose*, 930 F.3d 1123, 1136 (9th Cir. 2019) (must find the issue "requires" diverting resources); *La Asociacion de Trabajadores de Lake Forest*, 624 F.3d at 1088 n.4 (must be "forced"); *Ctr. for Biological Diversity v. Bernhardt*, No. 19-CV-05206-JST, 2020 WL 4188091, at *4-5 (N.D. Cal. May 18, 2020), at *4–5.

Where the organizational standing cases leave room for confusion as to whether diversion must be forced, returning to the constitutional minimum for standing helps clear things up. The original case on organizational standing, *Havens*, did not lay out a comprehensive regime of organizational standing, but it did make clear that the organizational injury test is "the same inquiry as in the case of an individual." *Havens Realty Corp. v. Coleman*, 455 U.S. at 378–79. Standing requires an injury that is "fairly traceable" to the challenged conduct. *Lujan*, 504 U.S. at 560. If the defendant's conduct did not force the plaintiff to divert resources, the only injury comes from the plaintiff's own actions. This self-inflicted injury would not be fairly traceable to the defendant. *Id.*

Finally, it is worth considering the implications of Plaintiffs' approach to standing. Their argument is an organization has standing by virtue of investigating conduct or starting a new campaign against someone who frustrates its general mission. Yet this would effectively nullify the constitutional requirements for standing. Just as an individual cannot gin up standing by researching and tweeting about something that indirectly makes his or her life harder, neither can an organization. *See Havens*, 455 U.S. at 378–79. This would be inconsistent with the constitutional minimum for standing, as there is no injury that is "fairly traceable" to the defendant's conduct: the plaintiff's own choice causes the injury. This does not mean advocacy

organizations can never have standing.[4] For example, an advocacy organization can have standing if the government fails to provide information as required, forcing the organization to gather the information itself. *People for the Ethical Treatment of Animals v. U.S. Dept. of Agriculture*, 797 F.3d 1087, 1093–1097 (D.C. Cir. 2015).

In sum, the challenged conduct must harm the organization's activities specifically, not merely frustrate their mission in a general sense. *Havens*, 455 U.S. at 379; *see also, e.g.*, *Jimenez v. Tsai*, 2017 WL 2423186, at *11. The conduct must force the organization to divert resources or suffer injury. *Asociacion de Trabajadores de Lake Forest*, 624 F.3d at 1088 n.4. Finally, the diversion of resources cannot be "business as usual." *Am. Diabetes Ass'n*, 938 F.3d at 1154.

Turning now to this case, it is clear IDA lacks standing.[5] IDA is an animal rights organization whose mission is to "fight for animals, people, and the environment." FAC ¶ 21. IDA does not adequately plead any concrete way in which its mission has been frustrated. It only pleads facts showing the abstract interests it fights for have been set back by Sanderson's misleading advertising. IDA's complaint literally only discusses diversion of resources, and asserts its mission has been frustrated. This is not enough.

IDA's diversion of resources claim is also deficient. Unsurprisingly, since the complaint

---

[4] Indeed, Sanderson interprets *Havens* and its progeny as drawing a distinction between service and advocacy organizations. It may be easier for service organizations to show standing, but Plaintiffs rightly point out there is no absolute rule. *See generally* Rights Of Others—Organization Standing, 13A Wright and Miller, *Federal Practice and Procedure* § 3531.9.5 (3d ed.) (outlining the doctrine and collecting cases).

[5] This analysis also leaves no doubt FoE does not have standing even if it were not precluded. FoE argues it was injured "in the precise way the Ninth Circuit expressed was cognizable organizational injury," e.g. it published action alerts. Pls.' Opp'n to Def.'s Mot. to Dismiss First Am. Compl. at 9, ECF No. 52 (July 23, 2021). This misunderstands the issue. The Ninth Circuit pointing out the meagerness of the case for diversion did not supply an exhaustive checklist for standing. The issue is that Sanderson's actions do not injure FoE in the first place. First, Sanderson did not frustrate FoE's mission in any concrete way. *Havens*, 455 U.S. at 379. FoE was not forced to divert resources. *La Asociacion de Trabajadores*, 624 F.3d at 1088 n.4. Besides, FoE has been fighting antibiotics in the food supply since 2014. The different forms FoE's advocacy took in the previous case and this one make no difference. It is all business as usual, so there was no diversion of resources. *Am. Diabetes Ass'n*, 938 F.3d at 1154.

does not aver any frustration of IDA's mission, the complaint does not permit a logical conclusion that diversion was required to prevent some other injury to IDA's activities. *La Asociacion de Trabajadores de Lake Forest*, 624 F.3d at 1088. IDA alleges a larger commitment of time in the relevant period than FoE, 200 hours, through various activities such as publicity and petitioning the Better Business Bureau's National Advertising Division. Even a large new campaign is not enough if the organization is not forced to undertake it. *Id*. First, as to the social media posts, blog posts, and similar materials, IDA admits in the complaint that "[c]onsistent with [its] mission, IDA provides the public with accurate information about the ways in which animal agriculture impacts animal welfare." FAC ¶ 21. This activity is a voluntary continuation of its previous activities, so these claims fail. *Am. Diabetes Ass'n*, 938 F.3d at 1154. Second, even the less-routine activities, such as petitioning Sanderson or submitting a complaint to the Better Business Bureau's National Advertising Division, are at root typical of IDA's advocacy. Anyway, they also suffer from the flaw of not being fairly traceable to Sanderson—only to IDA.[6] *Id.*

Another problem is IDA makes no specific averments about what it would have done with its time and money otherwise. It simply says it lost money because it diverted staff time from "its core mission of fighting for animals to addressing Sanderson's false and misleading advertising." FAC ¶ 23. If not for Sanderson's advertising, IDA says it would have "used those resources to accomplish other aspects of its organizational mission." *Id.* These conclusory allegations cannot support a finding of diversion. *Nat'l Council of La Raza*, 800 F.3d at 1040. On the whole, IDA's complaint provides no facts to allow a conclusion that it diverted resources from its usual business, let alone a forced diversion.

Finally, any claim IDA might have to being injured is belied by the fact that it did not take any action to address Sanderson's conduct during the pendency of the previous lawsuit in the district court between 2017 and 2019, and admits it simply monitored the prior action, which

---

[6] Sanderson characterizes IDA's National Advertising Division costs as dispute-resolution expenses that cannot qualify as injury, like litigation expenses. This claim is tenuous at best, but it need not be reached.

1   turned on lack of standing and whether to credit contradictory testimony about diversion of
2   resources. FAC ¶ 36. Then, IDA coordinated its advocacy with FoE, e.g. sending a joint letter to
3   Sanderson, followed by this suit. The only reasonable inference is IDA was not injured, and has
4   been trying to manufacture standing. It was not forced into diverting resources because of
5   Sanderson's conduct, which was continuous throughout this period. IDA proffers no alternative
6   explanation for this chronology. IDA resembles a soccer player who falls to the ground but stops
7   writhing when the referee looks away. IDA might argue that viewed in the light most favorable to
8   it, as is required at this stage, all this gap reveals is it decided to suffer injury because it thought
9   the previous case would imminently supply the cure. While possible, this does not seem plausible
10  in comparison to the alternative explanation; when combined with the fact that IDA did not even
11  make this argument, it seems like an unreasonable inference. *Iqbal*, 556 U.S. at 678.

12  Contrary to Plaintiffs' argument, this decision is consistent with recent cases in which this
13  court found organizational standing. In *California v. Ross*, 362 F. Supp. 3d 749 (N.D. Cal. 2018),
14  the organizational plaintiff was forced to respond to constituents. While IDA says it "reasonably
15  believed that […] IDA members relied on Sanderson's misrepresentations," it does not allege any
16  members actually sought its guidance, let alone on a scale sufficient to justify diversion of
17  resources. Further, in *Ross*, the challenged conduct would have diminished the power of its
18  constituents and thus its own power. This is an additional concrete injury to the organization itself,
19  not just abstract harms to its interests. Similarly, in *Innovation Law Lab v. Nielsen*, 366 F. Supp.
20  3d 1110 (N.D. Cal. 2019), the challenged conduct would have resulted in the organization's
21  clients being temporarily removed from the country while the organization attempted to represent
22  them. The obvious harm to the organization's activities that would have resulted is simply not
23  comparable to this case.[7]

---

[7] Plaintiffs also argue they are supported by the Ninth Circuit's affirmance of its decision in *East Bay Sanctuary Covenant v. Trump*, Nos. 18-17274, 18-17436, 2020 U.S. App. LEXIS 6620 (9th Cir. 2020). They are incorrect. Plaintiff in that case faced a choice between losing clients or diverting resources; again, there is a clear harm to the organization's own activities. Finally, Plaintiffs alerted the court to what they believe is a recent relevant judicial opinion, *Animal Legal*

ORDER GRANTING MOTION TO DISMISS
CASE NO. 20-cv-05293-RS
10

This decision is also consistent with the order in the previous case denying Sanderson's first motion to dismiss. *Organic Consumers Ass'n v. Sanderson Farms, Inc.*, 284 F. Supp. 3d 1005 (N.D. Cal. 2018). The claims for which standing has been found wanting here may superficially resemble claims deemed sufficient previously, but are distinguishable. FoE's claims in the prior case were fleshed out by discovery. It is those claims that have preclusive effect. In retrospect, of course, FoE did not have standing at the time of the original complaint either—that is the holding of the dismissal. Second, IDA's claims to standing were plainly manufactured for this suit. It was not so plain at the outset of the original suit that any of the plaintiffs had tried to manufacture standing. Just the opposite: the initial plaintiffs made more plausible claims for injury, e.g. the Center for Food Safety described its mission as primarily being a government watchdog, so the activity it described was more clearly a diversion of resources, not business as usual. First Amended Complaint, *FoE* I (N.D. Cal.), ECF No. 31 ¶ 106.

## V. CONCLUSION

In light of the foregoing, there is no need to reach the merits of the Plaintiffs' claims.[8] The defendant's motion to dismiss is granted. FoE's complaint will be dismissed without leave to amend. Plaintiffs have already amended their complaint, and any amendment from FoE would be futile because of preclusion. *See AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). IDA's claim is dismissed with leave to amend. As standing is the defect, dismissal must be without prejudice, *see Fleck & Assocs., Inc. v. Phoen*ix, 471 F.3d 1100, 1106-07 (9th Cir. 2006).

**IT IS SO ORDERED**.

---

*Defense Fund v. Hormel Foods Corporation*, District of Columbia Court of Appeals, No. 19-cv-0397. ECF No. 55. Plaintiffs also point out this case invoked another order in the previous litigation, *Organic Consumers Ass'n v. Sanderson*, 284 F. Supp. 3d 1005 (N.D. Cal. 2018). This case is inapposite, as it relies on local D.C. law of organizational standing. Besides, the reference to *Organic Consumers* is solely in the context of preemption, which is not reached here.

[8] *See FoE* I (9th Cir.) at 945 ("the UCL claim is entirely tethered to the representations.").

Dated: September 17, 2021

_____
RICHARD SEEBORG
Chief United States District Judge